DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CRAFTSMAN PLASTERING AND LATH, INC.,**
Appellant,

v.

**RATH MOR, LLC,** as assignee of Tara Management, Inc.,
Appellee.

No. 4D2025-0759

[August 12, 2026]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Gerard Joseph Curley, Jr., Judge; L.T. Case No. 502019CA003232XXXMB.

Michael A. Rosenberg, Amanda H. Wasserman, and John A. Chiocca of Cole, Scott & Kissane, P.A., Plantation, for appellant.

Alan B. Rose and Daniel A. Thomas of Taft Stettinius Hollister LLP, West Palm Beach, for appellee.

CONNER, J.

Appellant Craftsman Plastering and Lath, Inc. ("Craftsman") appeals from the final judgment entered after the trial court granted Appellee Rath Mor, LLC's ("Rath Mor") motion for additur after a jury trial. Because we determine the jury's damages award was properly entered based on the evidence presented, jury instructions, and verdict form, we reverse the final judgment granting additur and explain our reasoning.

## Background

Rath Mor, as the owner of the subject property, entered into a construction agreement with Tara Management, Inc. ("Tara"), a general contractor, to renovate existing structures and construct new structures on the property. Tara, in turn, entered into a subcontract agreement with Craftsman to perform stucco work on the property. Tara also entered into subcontracts with thirteen other subcontractors to work on the property. Each of the subcontractor agreements contained an indemnity provision in which the subcontractor agreed to indemnify and hold Tara and Rath

Mor harmless for claims "arising out of or caused by any act or omission" of the subcontractor.

Rath Mor discovered construction defects and filed suit against Tara for breach of contract and violation of Florida's building code. Tara obtained leave to file a third-party complaint against Craftsman and the thirteen other subcontractors, asserting multiple counts against each subcontractor. Craftsman defended against Tara's claims, asserting, in part, that when the construction was completed the indemnity agreement ended.

Rath Mor, Tara, and the thirteen other subcontractors entered into a global settlement agreement. Thereafter, Tara assigned its claims against Craftsman to Rath Mor, and Rath Mor was substituted as the real party in interest to all of Tara's claims against Craftsman.

The suit against Craftsman proceeded to a jury trial. The parties agreed that the only questions for the jury (based on Tara's assignment of the indemnity agreement) were whether Rath Mor's assignee damages fell within the scope of the subcontract's indemnity clause and, if so, the damages amount.

At trial, Rath Mor called Mark Heinish as its main witness. Heinish was the supervising partner of the law firm which represented Tara in the original lawsuit filed by Rath Mor. Heinish testified that Tara's defense in the suit resulted in attorney's fees of $740,302.28 and taxable costs of $39,016.38. Heinish testified that those amounts were the damages which Tara suffered and were assigned to Rath Mor and which Craftsman should owe under the indemnity agreement.

On cross-examination, Heinish admitted he could not say how much money the other thirteen subcontractors had contributed to the global settlement amount. However, he confirmed that none of the settlement money had been paid to Tara, and Tara had waived its right to obtain attorney's fees from the other thirteen subcontractors because those subcontractors contributed to the liability portion of the settlement amount. Heinish further testified that some portion of his firm's defense fees and costs were incurred by also suing the thirteen subcontractors. Additionally, he conceded that some portion of the fees and costs related to the counterclaim against Rath Mor, but explained that "very little work was actually done in relation to that counterclaim." Heinish testified that "the vast majority" of the fees and costs being sought at trial related to Craftsman's stucco work.

2

Rath Mor's initial closing argument contended that Craftsman had not satisfied its obligations to indemnify the damages as required under its subcontract with Tara. Rath Mor sought damages in the amount of $779,318.66, arguing that Heinish testified "the vast majority of the claims were for the stucco work," and he deemed the other claims which Tara had raised to be "trivial."

However, Rath Mor's rebuttal closing argument advised the jury that while Rath Mor did not think the jury should discount the full damages amount which Rath More was requesting, the jury could choose to discount the damages amount. Rath Mor asked the jury to consider the trivial value of the counterclaim and claims against the other subcontractors, if the jury chose to discount the damages amount owed by Craftsman.

The trial court instructed the jury that it should award damages supported by the greater weight of the evidence. The jury found an indemnity agreement existed between Tara and Craftsman, and Tara had spent $55,652 on legal fees and costs to defend claims brought by Rath Mor directly arising out of, or caused by, Craftsman's work. The verdict awarded $55,652 in damages.

Following trial, Rath Mor filed a motion for additur or, alternatively, a motion for new trial on damages. Rath Mor's motion alleged the verdict was inadequate because "[t]he award is only 7% of the undisputed amount Tara spent to defend itself after Craftsman breach[ed] its indemnity obligation," and thus the jury awarded almost exactly one-fourteenth of Tara's legal fees incurred by the suit. Rath Mor argued the damages verdict was error because Craftsman's duty was joint and several under the indemnity agreement. Rath Mor also argued that Heinish's testimony regarding Tara's damages was unrefuted.

Craftsman's written response argued that "neither party can confirm with certainty as to how the jury reached the $55,652 figure." Additionally, Craftsman argued that the evidence presented through Heinish's testimony supported the jury's verdict, as he testified that some portion of the fees were attributable to the claims against the other subcontractors and the counterclaim, and those claims could not be attributed to any fault by Craftsman. Moreover, Craftsman argued that "[u]nder the instructions given, the jury was free to weigh the testimony of Mr. Heinish as well as the invoices received into evidence to decide what portion arose out of or was cause[d] by Craftsman's work."

At the additur hearing, Rath Mor cited Heinish's testimony that all the other claims and suits against the other subcontractors were trivial, the trial was about Craftsman's defective work, and Craftsman had not submitted any testimony or other evidence to support the jury's verdict amount. Craftsman responded the evidence demonstrated that the amount proffered by Rath Mor was wrong, because that amount included expenses related to the final payment counterclaim and claims against thirteen other subcontractors, which had nothing to do with Craftsman's stucco work. According to Craftsman, the jury had the discretion to discount those expenses based on the jury instructions and verdict form. Additionally, Craftsman argued that joint and several liability was never before the jury, and neither the parties nor the trial court "can know how [the jury] arrived at the figure they arrived at."

The trial court stated:

> [L]et me be blunt with you guys. I think they divided by 14, I think that that's what occurred back in the jury room. Whether I can do anything about that or not, I'm not sure but that's what I think.

The trial court went on to say, "[w]e're all speculating—I'm speculating obviously, but that seems like that would—that would be correct to me."

The trial court granted Rath Mor's motion for additur or, alternatively, a motion for new trial, modifying the final judgment award to $779,318.66, and ordered Craftsman to either accept or reject the additur by giving notice within fifteen days after entry of the order. The order stated further that if the additur award was rejected, the trial court would hold a new trial on damages. Craftsman did not accept or reject the additur award within fifteen days and instead filed a notice of appeal as to the order granting additur. Subsequently, the trial court entered a final judgment in Rath Mor's favor for $779,318.66.[1]

---

[1] Although Rath Mor argues on appeal that Craftsman did not properly reject the additur, Rath Mor does not contest we have jurisdiction of this appeal. Further, even though the notice of appeal was filed prematurely, we have jurisdiction over this appeal. Fla. R. App. P. 9.110(l) ("[I]f a final order is rendered before dismissal of the premature appeal, the premature appeal will vest jurisdiction in the court to review the final order.").

4

## Appellate Analysis

An order granting a motion for additur is reviewed for an abuse of discretion. *Bluth v. Blake,* 128 So. 3d 242, 245 (Fla. 4th DCA 2013). However, to the extent the trial court's order was based on conclusions of law, the standard of review is de novo. *Id.*

Craftsman argues that the trial court improperly based the additur award on speculation that the jury divided the total damages for fees incurred by Tara by fourteen. Additionally, Craftsman contends that the jury's verdict was clear and unambiguous, and the instructions and closing arguments led the jury to believe it was not required to award the full amount requested by Rath Mor.

In response, Rath Mor initially argues that Craftsman did not preserve the right to appeal the additur. Rath Mor next argues that even if preserved, the trial court did not abuse its discretion, because it found that the jury's award of $55,652 was inconsistent with unrefuted evidence supporting total damages of $779,318.66, and the trial court did not speculate because it was obvious the jury had divided the total damages by fourteen. Additionally, Rath Mor asserts that it should have been awarded its full damages, because Craftsman was jointly and severally liable to Tara under the subcontractor indemnification provision. Finally, Rath Mor contends that the jury did not follow the trial court's instructions and lacked discretion to award an amount contrary to the evidence.

Craftsman's reply brief reargues that the trial court speculated as to the basis of the jury's damages award and further argues that Rath Mor could have sought a more specific instruction to inform the jury not to make any reductions for the other subcontractors, however Rath Mor did not do so. Further, "[t]he jury did exactly what they were instructed to do, which was to award an amount of money they believed 'fairly and adequately' compensated Rath Mor for its damages."

*Craftsman's challenge to the additur is properly before us*

"If the party adversely affected by such remittitur or additur does not agree, the court shall order a new trial in the cause on the issue of damages only." § 768.74(4), Fla. Stat. (2024) (emphasis added). "Any party adversely affected by the order granting remittitur or additur may reject the award and elect a new trial on the issue of damages only by filing a written election within 15 days after the order granting remittitur or additur is filed." Fla. R. Civ. P. 1.530(h)(3) (emphasis added).

5

Regarding Rath Mor's argument that Craftsman did not preserve the right to appeal because Craftsman had not filed a written notice in the trial court that it rejected the additur award, we begin by observing that neither section 768.74(4) nor rule 1.530(h)(3) state that the party adversely affected by an additur order accepts the additur if it does not file a written rejection or announce its rejection on the trial record. Section 768.74(4)'s plain language simply provides that if the adversely affected party does not agree to the additur amount announced by the trial court, the trial court "shall order a new trial in the cause on the issue of damages only." § 768.74(4), Fla. Stat. Although rule 1.530(h)(3) states the <u>rejection of an additur award</u> and <u>election of a new trial on damages</u> can <u>only be accomplished</u> by filing "a written election within 15 days after the order granting remittitur or additur is filed," we do not construe rule 1.530(h)(3)'s plain language to require that a written notice of rejection be filed within fifteen days of the order granting additur when the adversely affected party <u>does not</u> elect a new trial, but instead wants to reject the additur and seek the reinstatement of the jury's damages award through the appellate process. *See* Fla. R. Civ. P. 1.530(h)(3).

Here, we construe the notice of appeal contesting the additur as a rejection of the additur. We note that by filing the notice of appeal rather than filing a written notice of rejection and election of a new damages trial, the adversely affected party, if unsuccessful in the appeal contesting the additur, waives the right to a new damages trial under the applicable rule.

*The trial court erred in granting Rath Mor's additur motion*

The trial court has broad discretionary powers to grant a motion for additur, and "[t]he fact . . . there may be substantial, competent evidence in the record to support the jury verdict does not necessarily demonstrate that the trial [court] abused [its] discretion [in granting an additur motion]." *Kocik v. Rodriguez*, 327 So. 3d 318, 321 (Fla. 4th DCA 2021) (alterations in original) (quoting *Kings Gourmet Mkt., Inc. v. Hertz-Kusz*, 941 So. 2d 1195, 1196 (Fla. 4th DCA 2006)). "However, in considering an additur motion, a trial court may not act as a seventh juror by 'substituting [its] resolution of the factual issues for that of the jury.'" *Id.* (alteration in original) (quoting *Ortlieb v. Butts*, 849 So. 2d 1165, 1167 (Fla. 4th DCA 2003)).

Pursuant to section 768.74(2), Florida Statutes (2024), the trial court shall order additur if it finds the award inadequate. § 768.74(2), Fla. Stat. (2024). Section 768.74(5) provides the following factors for the trial court to consider when determining if an award is inadequate:

6

In determining whether an award is excessive or inadequate in light of the facts and circumstances presented to the trier of fact and in determining the amount, if any, that such award exceeds a reasonable range of damages or is inadequate, the court shall consider the following criteria:

(a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;

(b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;

(c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;

(d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and

(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.

§ 768.74(5)(a)-(e), Fla. Stat. (2024).

We agree with Rath Mor's arguments that the trial court's written order arguably established the trial court had considered the factors listed under subsections 768.74(5)(b), (c), and (d). However, the trial court's written order does not cite section 768.74(5) or those specific subsections. To the extent the trial court considered subsections 768.74(5)(b), (c), and (d) in granting additur, we are satisfied the trial court determined those subsections were met, based on the trial court's expressed belief that the jury had divided the total amount of damages sought by fourteen.

However, as posited by Craftsman, the trial court's determination was, by its own admission, speculative. As noted above, the trial court stated on the record that "[w]e're all speculating—I'm speculating obviously, but that seems like that would—that would be correct to me" as to how the jury determined the damages amount which it awarded.

Florida case law holds that the trial court does not sit as the seventh juror, but must set aside the amount awarded by the jury if the undisputed evidence supports an award calculation different than that awarded by the

jury. *See Rozar v. R.J. Reynolds Tobacco Co.*, 292 So. 3d 1202, 1207 (Fla. 1st DCA 2020) ("The trial court 'does not sit as a seventh juror,' but will reverse if the undisputed evidence supports [a] damages award that wasn't made." (quoting *Dyes v. Spick*, 606 So. 2d 700, 702-03 (Fla. 1st DCA 1992))); *see also Ferrer v. Serna*, 179 So. 3d 523, 525 (Fla. 4th DCA 2015) ("[W]here the 'undisputed evidence' supports an award of damages and the jury fails to make such an award, the trial court must award additur." (citing *Ortlieb*, 849 So. 2d at 1167)).

Rath Mor defends the additur award by contending "the unrefuted evidence established that Tara spent almost $780,000 because of Craftsman's breach and this was the amount that would fairly compensate Rath Mor." While Rath Mor is correct that Craftsman did not present evidence to support a specific money damages amount, Craftsman's cross-examination of Heinish questioned the reliability of the damages amount sought. Specifically, Craftsman noted that Heinish's total damages calculation had included legal fees and costs incurred by suing the other thirteen subcontractors for not performing as agreed, which is not an "act or omission" for which Craftsman agreed to be held liable. Additionally, Craftsman's cross-examination of Heinish established that Heinish did not bother to separate out the expenses attributable to suing the other subcontractors because "[i]t would probably take weeks to do. You'd have to sit there and go through every entry of billing."

Heinish also admitted on cross-examination that "[s]ome portion of those fees and costs relate to the counterclaim against Rath Mor filed by Tara Management." Therefore, the evidence was conflicting as to the total damages amount, even though Craftsman did not offer proof of, or argue for, another amount. Thus, Rath Mor's answer brief contention that the damages amount was unrefuted fails. We also note that Rath Mor bore the burden of proof as to the damages amount, not Craftsman.

Finally, we agree with Craftsman's argument that the trial court erred in ordering additur, because the jury could have arrived at its award from the evidence and jury instructions. Craftsman relies on our recent opinion in *Aliff v. Steven Weiss, M.D., P.A.*, 396 So. 3d 574 (Fla. 4th DCA 2024), in support of its argument.

In *Aliff*, Dr. Aliff and Dr. Weiss sued each other over claims arising out of a contract for Dr. Aliff to purchase an interest in a medical practice. *Id.* at 575. During the suit, Dr. Aliff died, and his estate was substituted in his place. *Id.* During closing argument, the estate's attorney told the jury,

Now, when you go back there, I want you to know **you can decide whatever number you want**. You don't have to go with my number, you don't have to go with zero, you don't have to go with 60, you don't have to go with $1.9 million, you can whatever you think.

*Id.* Additionally, the jury was given the following jury instructions regarding contract damages:

Now we are going to talk about contract damages. If you find for the Estate of Timothy Aliff, you will not consider the matter of damages on the contract claimed by Dr. Weiss. **But if you find for Steven Weiss, <u>you should award</u> Steven Weiss an amount of money that the greater weight of the evidence shows will fairly and adequately compensate Dr. Weiss for his damages**.

*Id.* at 576. After the jury announced an award of damages to Dr. Weiss that was lower than his requested award, Dr. Weiss moved for additur, arguing that "the jury had no discretion but to award the amounts due under the contract." *Id.* at 575. The trial court granted the motion, leading to the estate's appeal. *Id.* at 575.

On appeal, we held that the trial court erred in granting additur, because "the trial court's instructions to the jury and the verdict form gave the jury the discretion to award any amount of damages." *Id.* at 577.

Here, the trial court's jury instructions were substantially the same as the instruction given to the *Aliff* jury regarding the damages amount. The trial court stated:

[I]f you find for Rath Mor, **you should award Rath Mor an amount of money that the greater weight of the evidence shows will fairly and adequately compensate Rath Mor for its damages.** You shall consider the following type of damages: Compensatory damages.

Compensatory damages is that amount of money which will put Rath Mor in as good a position as Tara would have been if Craftsman had not breached the contract and which naturally result from the breach.

(Emphasis added). The jury here was informed that its verdict "must be based on the evidence that has been received and the law on which [the

9

trial court has] instructed you." The second interrogatory on the verdict form also gave the jury discretion by asking: "How much did Tara spend on legal fees and costs to defend the claims brought by Rath Mor against Tara arising out of or caused by Craftsman's construction work?" Rath Mor did not object to the jury instructions or the verdict form.

Additionally, like in *Aliff,* the jury was told by the parties during closing argument that it could discount the damages amount sought by Rath Mor. Rath Mor's counsel argued to the jury that he did not think the jury should discount the number. However, he informed the jury that it could discount the number. By telling the jury that it did not have to award the entire amount requested, Rath Mor's counsel waived the right to argue now that the jury had to award the entire amount. *See id.*

More importantly, the jury was not instructed on joint and several liability despite Rath Mor's assertion on appeal that "Craftsman's indemnity obligation was joint and several, not divisible." The first time Rath Mor argued that the damages were joint and several was in its additur motion.

Additionally, Rath Mor's arguments on appeal regarding Craftsman's duty to defend Tara under the indemnity agreement were not well developed, and its answer brief does not explain why Craftsman had a duty to indemnify Rath Mor for the third-party claims which Rath Mor had asserted against the other subcontractors for their work. *See Polyglycoat Corp. v. Hirsch Distribs., Inc.,* 442 So. 2d 958, 960 (Fla. 4th DCA 1983) ("When points, positions, facts and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned, or deemed by counsel to be unworthy.").

For the above reasons, we determine that the trial court erred in granting Rath Mor's additur motion.

## Conclusion

Having determined the trial court improperly granted additur, we reverse the final judgment and remand for the trial court to vacate the final judgment and enter a final judgment consistent with the jury's damages award.

*Reversed and remanded with instructions.*

CIKLIN and FORST, JJ., concur.

10

\*      \*      \*

*Not final until disposition of timely-filed motion for rehearing.*